IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
DAN P. SHORT,                      )
                                   )
            Plaintiff,             )
                                   )
     v.                            )     1:12CV555
                                   )
CAROLYN W. COLVIN,                 )
Acting Commissioner of             )
Social Security,                   )
                                   )
            Defendant.             )
```

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Plaintiff Dan P. Short ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act ("Act"), codified as amended at 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Act.

Plaintiff subsequently filed a Motion for Judgment Reversing or Modifying the Decision of the Commissioner or Remanding the Cause for a Hearing (Doc. 10), and the Commissioner filed a Motion for Judgment on the Pleadings. (Doc.

12.) Additionally, the administrative record has been certified to this court for review.[1]

For the reasons set forth below, the Commissioner's motion will be granted, Plaintiff's motion to reverse the decision of the Commissioner and request for remand will be denied, and the case will be dismissed.

I. **PROCEDURAL BACKGROUND**

Plaintiff applied for DIB on March 13, 2008, alleging a disability beginning on November 1, 2006. (Tr. at 15.) After his claim was denied initially (id. at 70-73) and upon reconsideration (id. at 81-85), Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (id. at 86). The hearing was held on April 1, 2010. (Id. at 30-67). In a decision dated September 2, 2010, the ALJ denied Plaintiff's application. (Id. at 15—29.) On April 3, 2012, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (id. at 1-5), and Plaintiff filed the present action on June 4, 2012.

The ALJ determined that Plaintiff had the following severe impairments: fibromyalgia; degenerative disc disease; cervical

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Doc. 5.)

spondylosis; right third finger triggering; idiopathic axonal neuropathy; high frequency sensorineural hearing loss; bipolar disorder; and substance abuse disorder, in remission. (Tr. at 17.) The ALJ also found that Plaintiff's impairments, alone or in combination, did not meet or equal a listing impairment. (Id. at 20.)

The ALJ further determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work with the following limitations: limited to jobs requiring frequent but not constant bilateral fingering; restricted from concentrated exposure to hazards; and limited to jobs performing simple, routine, repetitive tasks and requiring only minimal interaction and performed at a non-production pace and in a low-stress environment. (Id. at 22.) The ALJ determined that Plaintiff was unable to perform the requirements of his past relevant work, but that considering his age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy which he was capable of performing, including: floor waxer and industrial cleaner (medium), mailroom clerk (light), and ink printer (sedentary). (Id. at 27–28.) Thus, the ALJ found that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (Id. at 29.)

**II. LEGAL STANDARD**

Federal law authorizes judicial review of the Social Security Commissioner's denial of social security benefits. 42 U.S.C. § 405(g); Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is

substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472.

In undertaking this limited review, the court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)).

> Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.

Hancock, 667 F.3d at 472.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation

---

[2] As set out in Craig:

The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical.

Craig v. Chater, 76 F.3d 585, 589 n.1 (4th Cir. 1996).

and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')."

Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

III. **ANALYSIS**

    A. **Plaintiff's Residual Functional Capacity (RFC)**

Plaintiff asserts that the ALJ erred in finding he had the RFC to perform medium work, with additional limitations. Specifically, Plaintiff maintains (1) that the RFC fails to consider the limited use of his arms and hands and (2) that the exertional requirements associated with medium work are incompatible with Plaintiff's impairments. (Pl.'s Br. in Supp. of Mot. for J. ("Pl.'s Br.") (Doc. 11) at 5.)

        1. **Use of Arms and Hands**

Plaintiff points out that he has several impairments related to his arms and hands, including right third finger triggering, idiopathic axonal neuropathy and fibromyalgia. (Id. at 3.) The ALJ found that these conditions were severe impairments. (Tr. at 17.) Plaintiff also contends his hand

---

[4] A claimant can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.

tremor interferes with his ability to use his arms and hands.[5] (Pl.'s Br. at 6 n.1.)

As a result of these conditions, Dr. Mital P. Dalsania, one of Plaintiff's treating physicians, recommended that Plaintiff use wrist splints and elbow pads and avoid leaning on the elbow and avoid extensive repetitive motions of elbow flexion which could aggravate his pain. (Tr. at 284-85.)

The RFC limited Plaintiff to frequent but not constant bilateral fingering, which addresses his right third finger triggering. (Pl.'s Br. (Doc. 11) at 8-9.) With respect to his hand tremor, Plaintiff testified at the hearing that the hand tremor affected his ability to write, to type and to put a key in a lock. (Tr. at 61—63.) The ALJ noted this condition, but did not find it to be a severe impairment that had more than a minimal effect on his ability to engage in work-related activities. (Id. at 20.) A diagnosis alone does not establish disability; rather, a plaintiff must also show a "related functional loss." Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). Here, Dr. Dalsania noted that the tremor did not

---

[5] During his testimony, Plaintiff stated that the tremor kept him from typing on his computer. However, there was no indication that Plaintiff complained about the tremor to any of his treating physicians. In addition, the tremor existed when Plaintiff worked, prior to the onset of any disability. (Tr. at 20.)

interfere with Plaintiff's day-to-day activities and that it did not prevent him from working in the past. (Tr. at 287.) Additionally, state agency medical consultants, Drs. Perry Caviness and William Farley, reviewed records referencing the tremor (see id. at 276-77, 286-88, 303, 305-06, 315, 385; see also id. at 436-37, 455-56, 502, 551, 568, 571), but did not find that it would further warrant limitations in the RFC. (Id. at 396-43, 572-79). These opinions provide substantial evidence to support the finding that the hand tremor was not a severe impairment causing any further limitation of Plaintiff's RFC.

Plaintiff stated that his fibromyalgia caused him cognitive difficulties and pain (id. at 18, 381), but did not identify any functional limitations that were assessed.[6] Additionally,

---

[6] The ALJ addressed this directly in the report. The ALJ found that despite the cognitive "fog" Plaintiff claims results from his fibromyalgia, the overall record does not support a finding that any alleged cognitive issues would impair Plaintiff's ability to work. The ALJ cites (1) Plaintiff's behavior and articulate testimony at the hearing, (2) Plaintiff's self-reported activities of daily living including extensive time reading and writing political commentary, and (3) Plaintiff's own reporting to Dr. Marcus Pelucio that "he felt his cognition had improved" as evidence of inconsistencies in the record and Plaintiff's claimed cognitive impairment. (Tr. at 24-25.) In regard to the pain from fibromyalgia causing any impairment, the ALJ found the record did not support such a finding. The ALJ gave great weight to the fact that Plaintiff has not received any medical treatment for the alleged pain since September 2008 which is inconsistent with the severity of the pain alleged by Plaintiff. (Id. at 25.)

Plaintiff further testified that he was not sure how his axonal neuropathy affected him. (Id. at 61.) Dr. Dalsania noted that extensive repetitive flexion could aggravate Plaintiff's pain (id. at 284-85), but the ALJ did not accept this as a limitation.[7] As Plaintiff has not identified any additional limitations caused by these conditions that the ALJ did not consider, Plaintiff has not met his burden of proof on the issue.

### 2. Medium Work Requirements

Plaintiff further contends that the RFC for medium work is incompatible with his abilities. The exertional requirements of medium work include the ability to lift/carry 25 pounds frequently and 50 pounds occasionally. 20 C.F.R. § 404.1567. Plaintiff testified that he cannot lift more than 25 pounds. (Tr. at 59.) He also asserts that his fibromyalgia, degenerative disc disease, and cervical spondylosis cause pain and fatigue which would limit his ability to lift and carry at the medium exertional level. (Pl.'s Br. (Doc. 11) at 11.) Plaintiff argues that the lifting and carrying requirements of medium work

---

[7] The ALJ noted that none of Plaintiff's treating physicians or psychologists, including Dr. Dalsania, provided any functional assessment of Plaintiff's ability to perform basic work activities, nor have any of them restricted Plaintiff's activities in any way. In the absence of any such evidence, the ALJ gave great weight to the findings of the state agency medical consultants. (Tr. at 26.)

- 12 -

conflict with Dr. Dalsania's observation that extensive repetitive flexion of the elbow could result in increased pain. (Id. at 10.)

However, as discussed supra note 7, the ALJ did not credit the limitation of extensive repetitive flexion.[8] Instead, the ALJ was persuaded by the opinions of the state agency medical consultants, Drs. Caviness and Farley, who found that Plaintiff was capable of medium work, including lifting/carrying 25 pounds frequently and 50 pounds occasionally. (Tr. at 26.) Because none of Plaintiff's treating physicians provided a functional assessment of Plaintiff's ability to perform basic work activities, opinions of the state agency medical consultants provide substantial evidence supporting the ALJ's RFC determinations.[9] While Plaintiff may disagree with the weight

---

[8] Plaintiff does not argue that the ALJ's failure to credit the limitation is not supported by substantial evidence.

[9] "In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." Social Security Ruling 96-6p, Policy Interpretation Ruling Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence, 1996 WL 374180 (July 2, 1996) ("SSR 96-6p").

afforded to the medical opinions, reweighing opinion evidence is not within the province of the court. See Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (holding that a reviewing court should not undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ).

Finally, the ALJ did not find Plaintiff's claims, including his statement that he could not lift more than 25 pounds, credible. Plaintiff argues that his activities of daily living are not inconsistent with his claimed limitations as the ALJ found. However, the ALJ noted that Plaintiff read the paper, attended physical therapy, went shopping, performed household chores and made repairs, read books, went to movies, wrote political commentary, and attended support meetings 3-4 times per week. (Tr. at 24-26.) Additionally, Plaintiff reported to providers on several occasions that he was doing well and he had not received recent treatment for his conditions (id. at 25), suggesting that the conditions were not as disabling as alleged. These facts support the ALJ's finding that Plaintiff's statements regarding the intensity, persistence and limiting effects of his symptoms were not fully credible and that he was not as limited in his activities as he claimed. In sum,

- 14 -

Case 1:12-cv-00555-WO-LPA   Document 15   Filed 06/02/15   Page 14 of 18

Plaintiff has failed to demonstrate that the ALJ erred in formulating the RFC.

   **B.  Step Five of the Sequential Analysis**

At "step five" of the sequential analysis, the burden of proof falls upon the Commissioner to prove that jobs exist that could be performed by persons fitting the claimant's functional and vocational profile. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975). The Commissioner may meet this burden by relying on the Grids or by having a vocational expert ("VE") testify at the administrative hearing. 20 C.F.R. § 404.1566.

Plaintiff asserts that the ALJ erred in this analysis in several respects. Plaintiff maintains that the questions directed to the VE failed to properly reflect his RFC. (Pl.'s Br. (Doc. 11) at 16.) He also contends that, although a VE was present at the hearing, the ALJ did not ask hypothetical questions but instead sent interrogatories for the VE to answer. (Id. at 14-15.) It is important to note that receiving testimony from a VE through a series of post-hearing written interrogatories is a procedure acceptable and appropriate within the context of the Commissioner's Rules and Regulations. See Ellis v. Astrue, No. PWG-08-746, 2010 WL 3469819, at *2 (D. Md. Sept. 1, 2010); see also Starr v. Sullivan, 981 F.2d 1006, 1009

- 15 -

(8th Cir. 1992) (rejecting plaintiff's argument that the ALJ denied him due process in examining the VE through written interrogatories).

Plaintiff further submits that, after concluding that he retained the RFC for medium work, with limitations, the ALJ erred by identifying a light duty job (mailroom clerk) and a sedentary job (ink printer). Had Plaintiff had the RFC for either sedentary or light work, a finding of "disabled" would be directed by Rules 201.06 or 202.06 of the Medical-Vocational Guidelines. (Pl.'s Br. (Doc. 11) at 15-16.) However, having identified two medium level jobs, industrial cleaner and floor waxer, the Commissioner has satisfied his burden at this step. See Prunty v. Barnhart, No. 6:04 CV 00038, 2005 WL 1926611, at *3 (W.D. Va. Aug. 9, 2005) (finding VE's testimony identifying one job that the claimant could perform as sufficient to meet ALJ's step-five burden).

Finally, Plaintiff asserts that the ALJ identified jobs that had a noise level of 3 (moderate noisy environment) that failed to account for Plaintiff's impaired hearing. The ALJ did find at step two that Plaintiff's high frequency sensorineural hearing loss was a severe impairment. (Tr. at 17.) However, Plaintiff does not use hearing aids, he is able to engage in interpersonal communication, and he testified that his hearing

- 16 -

loss does not seem to affect his ability to work. (Id. at 24, 66.) The Fourth Circuit has explicitly stated that "[s]tep two of the sequential evaluation is a threshold question with a de minimis severity requirement." Felton-Miller v. Astrue, 459 Fed Appx. 226, 230 (4th Cir. 2011). A finding of severe impairment at step two does not automatically become a limitation impacting the RFC.[10] Based on Plaintiff's own testimony, his hearing loss has not affected his ability to work. (Tr. at 66.) There is nothing in the record suggesting that the ALJ's finding that Plaintiff's hearing loss is a severe impairment at step two is incongruent with Plaintiff's ability to perform the jobs identified by the ALJ. See id. at 230 (holding that ALJ's finding plaintiff's disorder was a severe impairment at step two did not contradict ALJ's final conclusion that the disorder's impact on plaintiff's functioning was mild).

---

[10] Other courts within this district have previously found that "[a]lthough an ALJ is not automatically required to include limitations from all of a claimant's step two severe impairments when assessing his RFC, the ALJ must include such limitations where the evidence supports a finding that the underlying impairments will limit the claimant's ability to work." Jones v. Colvin, No. 1:10CV911, 2014 WL 4060563, at *4 (M.D.N.C. Aug. 14, 2014) (internal citations and quotations omitted). In the present action, the record is void of evidence to indicate that Plaintiff's hearing impairment will limit Plaintiff's ability to work. As stated supra, Plaintiff specifically testified that it does not.

**IV. CONCLUSION**

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Judgment Reversing or Modifying the Decision of the Commissioner or Remanding the Cause for a Hearing (Doc. 10) is **DENIED,** that Commissioner's Motion for Judgment on the Pleadings (Doc. 12) is **GRANTED,** and that this action is **DISMISSED WITH PREJUDICE.**

A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 2nd day of June, 2015.

_____
United States District Judge